**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **ROY STEWART MOORE and KAYLA MOORE,**<br><br>　　　　　　**Plaintiffs**,<br><br>**v.**<br><br>**SACHA NOAM BARON COHEN, SHOWTIME NETWORKS, INC., AND CBS CORPORATION,**<br><br>　　　　　　**Defendant**. | Civil Action No. 1:18-cv-02082 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO TRANSFER CASE PURSUANT TO 28 U.S.C. § 1404(A)**

Elizabeth A. McNamara (*pro hac vice* forthcoming)
Rachel F. Strom (*pro hac vice* forthcoming)

DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York  10020
(212) 489-8230
(212) 489-8340
lizmcnamara@dwt.com
rachelstrom@dwt.com

Eric J. Feder (DC Bar No. 1048522)

DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, N.W., Suite 800
Washington, D.C.  20006-3401
(202) 973-4200
(202) 973-4499 (fax)
ericfeder@dwt.com

Of Counsel:
Russell Smith, Esq.
Jeff Holmes, Esq.

SMITHDEHN LLP
2500 Broadway
Building F, Suite F-125
Santa Monica, California  90404
(310) 396-9045
rsmith@smithdehn.com
jholmes@smithdehn.com

*Attorneys for Defendants Sacha Noam Baron Cohen,
Showtime Networks Inc. and CBS Corporation*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................... 1

FACTUAL BACKGROUND ........................................................................................ 3

    A.    The Parties ................................................................................................ 3

    B.    *Who Is America?* ...................................................................................... 4

    C.    Judge Moore's Agreement to Participate in *Who Is America?* ............... 5

    D.    This Action ................................................................................................ 7

ARGUMENT ................................................................................................................. 7

I.    FORUM SELECTION CLAUSES MUST BE ENFORCED ABSENT
    EXTRAORDINARY CIRCUMSTANCES ...................................................... 8

II.    THE COURT SHOULD TRANSFER THIS CASE PURSUANT TO THE
    MANDATORY FORUM SELECTION CLAUSE ........................................... 10

    A.    The Forum Selection Clause Applies to this Case and is Valid ............. 10

    B.    The "Public Interest" Factors Weigh In Favor of Transfer .................... 15

    C.    The Entire Case Should Be Transferred to New York .......................... 17

CONCLUSION .............................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*2215 Fifth St. Assocs. v. U-Haul Int'l, Inc.*,
  148 F. Supp. 2d 50 (D.D.C. 2001) ...................................................................12, 13

*Am. Patriot Ins. Agency, Inc. v. Mutual Risk Mgmt., Ltd.*,
  248 F. Supp. 2d 779 (N.D. Ill. 2003), *rev'd on other grounds*,
  364 F.3d 884 (7th Cir. 2004) ...............................................................................18

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*,
  571 U.S. 49 (2013)......................................................................................... *passim*

*Bank v. Laptop & Desktop Repair LLC*,
  206 F. Supp. 3d 772 (E.D.N.Y. 2016) ..................................................................13

*Billard v. Angrick*,
  220 F. Supp. 3d 132 (D.D.C. 2016) ........................................................................9

*Carnival Cruise Lines, Inc. v. Shute*,
  499 U.S. 585 (1991)..................................................................................................8

*Cheney v. IPD Analytics, LLC*,
  583 F. Supp. 2d 108 (D.D.C. 2008) ................................................................12, 13

*Commerce Consultants Int'l, Inc. v. Vetrerie Riunite, S.p.A.*,
  867 F.2d 697 (D.C. Cir. 1989) ...............................................................................13

*D&S Consulting, Inc. v. Kingdom of Saudi Arabia*,
  322 F. Supp. 3d 45 (D.D.C. Aug. 21, 2018),
  *appeal filed*, No. 18-7140 (D.C. Cir. Sept. 18, 2018)........................................9, 12

*Daniels v. Wilkie*,
  No. 17 Civ. 1543, 2018 WL 2324085 (D.D.C. May 22, 2018) ..............................17

*Farah v. Esquire Magazine*,
  736 F.3d 528 (D.C. Cir. 2013) .................................................................................3

*Fed. Hous. Fin. Agency v. First Tennessee Bank Nat'l Ass'n*,
  856 F. Supp. 2d 186 (D.D.C. 2012) .......................................................................17

*Gardner v. Mabus*,
  49 F. Supp. 3d 44 (D.D.C. 2014) ...........................................................................17

*Hitchcock v. United States*,
  665 F.2d 354 (D.C. Cir. 1981) ...............................................................................16

*Hourani v. PsyberSolutions*,
  690 F. App'x 1 (D.C. Cir. 2017) ),
  *aff'g* 164 F. Supp. 3d 128 (D.D.C. 2016) ...............................................................3

*Hustler Magazine, Inc. v. Falwell*,
  485 U.S. 46 (1988).................................................................................................1, 2

*In re O'Leska*,
  No. 00-5339, 2000 WL 1946653 (D.C. Cir. 2000)..................................................17

*Inc. v. Google Inc.*,
  72 F. Supp. 3d 53 (D.D.C. 2014) ............................................................................11

*Kazenercom TOO v. Turan Petroleum, Inc.*,
  590 F. Supp. 2d 153 (D.D.C. 2008) ........................................................................16

*Kotan v. Pizza Outlet, Inc.*,
  400 F. Supp. 2d 44 (D.D.C. 2005) ..........................................................................12

*KTV Media Int'l, Inc. v. Galaxy Grp., LA LLC*,
  812 F. Supp. 2d 377 (S.D.N.Y. 2011).....................................................................11

*Lipcon v. Underwriters at Lloyd's, London*,
  148 F.3d 1285 (11th Cir. 1998) ..............................................................................14

*M.M.M. on behalf of J.M.A. v. Sessions*,
  319 F. Supp. 3d 290 (D.D.C. 2018) ........................................................................17

*M/S Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972)...............................................................................................8, 12

*Marra v. Papandreou*,
  216 F.3d 1119 (D.C. Cir. 2000) ..............................................................................12

*Marra v. Papandreou*,
  59 F. Supp. 2d 65 (D.D.C. 1999), *aff'd*, 216 F.3d 1119 (D.C. Cir. 2000) ..............13

*Mazzarino v. Prudential Ins. Co. of Am.*,
  955 F. Supp. 2d 24 (D.D.C. 2013) ..........................................................................16

*McGowan v. Pierside Boatworks, Inc.*,
  215 F. Supp. 3d 48 (D.D.C. 2016) ............................................................................8

*Novak v. Tucows, Inc.*,
  No. 06-CV-1909, 2007 WL 922306 (E.D.N.Y. Mar. 26, 2007),
  *aff'd*, 330 F. App'x 204 (2d Cir. 2009)...................................................................18

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) ............................................................................................9

*Psenicska v. Twentieth Century Fox Film Corp.*,
    No. 07 Civ. 10972, 2008 WL 4185752 (S.D.N.Y. Sept. 3, 2008),
    *aff'd*, 409 F. App'x 368 (2d Cir. 2009) ..........................................................2, 15

*Pueblo v. Nat'l Indian Gaming Comm'n*,
    731 F. Supp. 2d 36 (D.D.C. 2010) ....................................................................16

*Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC*,
    60 F. Supp. 3d 21 (D.D.C. 2014) ................................................................11, 18

*Streit v. Twentieth Century Fox Film Corp.*,
    No. CV 07-J-1918-S, 2008 WL 11422482 (N.D. Ala. Jan. 30, 2008)...................14

*Water & Sand Int'l Capital, Ltd. v. Capacitive Deionization Tech. Sys., Inc.*,
    563 F. Supp. 2d 278 (D.D.C. 2008) ..................................................................13

**State Cases**

*Klapper v. Graziano*,
    129 A.D.3d 674, 10 N.Y.S.3d 560 (N.Y. App. Div. 2015) ....................................11

**Constitutional Provisions**

U.S. Const. amend. I .................................................................................................1

**Federal Statutes**

28 U.S.C. § 1404(a) ...................................................................................... *passim*

**Rules**

Local Civil Rule 7(m) ................................................................................................7

Defendants Sacha Baron Cohen ("Cohen"), Showtime Networks Inc. ("SNI"), and CBS Corporation ("CBS") (collectively, "Defendants") submit this memorandum of points and authorities in support of their motion pursuant to 28 U.S.C. § 1404(a) for an order transferring this action to the United States District Court for the Southern District of New York pursuant to a valid and binding agreement signed by plaintiff Roy S. Moore ("Judge Moore").

## PRELIMINARY STATEMENT

In this lawsuit, a prominent public official—former Chief Justice of the Alabama Supreme Court and recent candidate for the United States Senate, Roy S. Moore—sues the makers of the political comedic television series *Who Is America?* (the "Program") for lampooning the public controversy over reports that Judge Moore had inappropriate relationships with young women.  Despite admittedly having signed a Standard Consent Agreement waiving all claims arising out of his participation in the Program (Compl. ¶ 24), Judge Moore now asserts claims for defamation, intentional infliction of emotional distress and fraud on behalf of himself and his wife, Kayla Moore ("Ms. Moore").[1]

Thirty years ago, the Supreme Court concluded that exactly these types of claims are barred by the First Amendment in *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988), which underscored the vital role that political satire of those in power has played throughout the history of this country.  *Id.* at 54 ("Despite their sometimes caustic nature, from the early cartoon portraying George Washington as an ass down to the present day, graphic depictions and satirical cartoons have played a prominent role in public and political debate.").  Plaintiffs' claims are also completely barred by the Consent Agreement Judge Moore signed waiving all claims

---

[1] Judge Moore and Ms. Moore are referred to collectively as the "Plaintiffs."

against "anyone associated with the Program" that are "related to the Program or its production." *See* Declaration of Todd Schulman ("Schulman Decl.") Ex. A ("Consent Agreement") ¶ 4.[2]

However, this Court need not reach any of these issues because this case cannot be litigated here.  The Consent Agreement Judge Moore signed includes a clear, mandatory forum selection clause providing that, although the claims asserted in this case are all waived, if he nevertheless brings any claim "related to the Program or its production," such claim "*must* be brought before, and adjudicated by, *only* a competent court located in the State and County of New York, and governed by the substantive laws of the State of New York."  Consent Agreement ¶ 5 (emphasis added).  The Consent Agreement states further that the forum selection clause "is intended by the parties to stand on its own, and it is intended to be valid and enforceable, even if a court finds that other paragraphs are not valid or enforceable."  *Id.*

The Supreme Court has made clear that forum selection clauses must be "given controlling weight in all but the most exceptional cases," and instructed courts to enforce such clauses by transferring a case to the designated judicial district under 28 U.S.C. § 1404(a) ("Section 1404(a)").  *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013) (citation omitted).  This run-of-the-mill tort action is plainly not an "exceptional case[]" and the Court should therefore transfer this action to the Southern District of New York.

---

[2] Indeed, a nearly identical consent agreement to the one Judge Moore signed has been upheld to bar similar claims in past lawsuits against the same comedian, Defendant Sacha Baron Cohen, from individuals featured in his film, *Borat: Cultural Learnings of America for Make Benefit Glorious Nation of Kazakhstan* ("*Borat*").  *See Psenicska v. Twentieth Century Fox Film Corp.*, No. 07 Civ. 10972, 2008 WL 4185752, at *6 (S.D.N.Y. Sept. 3, 2008) (consolidating and dismissing multiple suits against Mr. Cohen and other producers of the film), *aff'd*, 409 F. App'x 368 (2d Cir. 2009).

## **FACTUAL BACKGROUND**

### A.     The Parties

Plaintiff Roy Moore is the former Chief Justice of the Supreme Court of Alabama.

Compl. at 1.  In 2017, he ran for the U.S. Senate for the State of Alabama in a special election to

replace Senator Jeff Sessions, who had been appointed Attorney General of the United States.

During the campaign, Judge Moore faced mounting and widely reported claims that he had

initiated inappropriate sexual encounters with young women—including one who was underage

at the time—in the 1970s, while he was in his 30s.  *See generally* Stephanie McCrummen, *et al.*,

*Woman says Roy Moore initiated sexual encounter when she was 14, he was 32*, Wash. Post

(Nov. 9, 2017), http://wapo.st/2zvHx84; Stephanie McCrummen, *Woman shares new evidence of*

*relationship with Roy Moore when she was 17*, Wash. Post (Dec. 4, 2017),

http://wapo.st/2AoUTDq.[3]  On December 12, 2017, Judge Moore lost the election to Democratic

candidate Doug Jones, which many analysts attributed to the allegations made against him.  *See,*

*e.g.*, Alexander Burns & Jonathan Martin, *Once a Long Shot, Democrat Doug Jones Wins*

*Alabama Senate Race*, N.Y. Times (Dec. 12, 2017), https://nyti.ms/2C8yEQz (describing Judge

Moore as "scandal-scarred" "after a brutal campaign marked by accusations of sexual abuse and

child molestation"); Jonathan Allen, *Alabama's women wrote the verdict on Roy Moore*, NBC

News (Dec. 13, 2017), https://www.nbcnews.com/storyline/2017-elections/alabama-s-women-

wrote-verdict-roy-moore-n829186.  But even before his Senate campaign, Judge Moore had been

an outspoken public figure, known for creating controversy.  *See* Jess Bidgood, *et al.*, *For Roy*

*Moore, a Long History of Combat and Controversy* (Nov. 18, 2017), https://nyti.ms/2jDqBGI;

Fox News, *Who is Roy Moore?*, FoxNews.com (Dec. 12, 2017), http://fxn.ws/2Bix2WI

---

[3] The Court can take judicial notice of these widely reported, recent national news stories.  *See,*
*e.g.*, *Hourani v. PsyberSolutions*, 690 F. App'x 1, 3 (D.C. Cir. 2017), *aff'g* 164 F. Supp. 3d 128,
132 & n.1, 136 (D.D.C. 2016); *Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013).

(discussing how Judge Moore was removed from the Alabama Supreme Court twice, first "when he refused to move a boulder-sized Ten Commandments monument from the statehouse," and then permanently in 2016, "after he instructed probate judges to deny marriage licenses to gay people," even after the U.S. Supreme Court held that bans on gay marriage were unconstitutional).

Plaintiff Kayla Moore is Judge Moore's wife, and was herself recently an unsuccessful candidate for political office, running for state Republican Executive Committee in June 2018. *See* Connor Sheets, *Roy Moore's wife, Kayla Moore, loses bid for state Republican Executive Committee*, AL.com (June 5, 2018), http://s.al.com/y7j0TPi.

Defendant SNI, a wholly owned subsidiary of CBS, exhibited the Program on the cable network it owns and operates, SHOWTIME.  *See* Declaration of Brendan Countee ("Countee Decl.") ¶ 4.  The Program was created, co-produced, and co-written by its star, the comedian Defendant Sacha Baron Cohen, who is best known for his other reality-style projects, including the television series *Da Ali G Show*, and the films *Borat* and *Brüno*.  *See* Schulman Decl. ¶ 2.

### B.     *Who Is America?*

The Program is a reality-style series that employs fictional characters, played by Cohen, from across the political spectrum who conduct actual interviews with real individuals – both famous and unknown – to expose the disparate views in our country.  *See* Countee Decl. ¶ 6.  For example, Cohen portrays a conservative conspiracy theorist and "citizen journalist" named Billy Wayne Ruddick Jr., PhD, who skewers the left-leaning views of former Presidential candidates Bernie Sanders and Jill Stein.  He also plays Gio Monaldo, an Italian playboy and fashion photographer who reveals the vanity in Hollywood through interviews with various celebrities. And, as is relevant here, Cohen portrays former Mossad agent Erran Morad, an "anti-terror" expert, who interviews a number of U.S. political pundits and candidates who backed his

"Kinderguardians" plan to arm school children aged 3 to 16 and teaches a former Republican

state representative how to detect terrorists by yelling racial epithets and wearing a burqa. *Id.*

### C.    Judge Moore's Agreement to Participate in *Who Is America?*

The third episode of *Who Is America?* included an interview of Judge Moore by the

fictional Erran Morad character.  Compl. ¶ 18; *see also* Showtime, *'Roy Moore Interview' Ep. 3*

*Official Clip|Who Is America?|SHOWTIME*, YouTube (Jul. 29, 2018),

https://youtu.be/3kaJaDx51iw ("YouTube Clip"); Countee Decl. Ex. A.  The interview with

Judge Moore took place at a hotel in Washington, D.C. in February 2018.  *See* Compl. ¶ 15.

Prior to the taping, Judge Moore (with Ms. Moore present) signed a Standard Consent

Agreement with "Yerushalayim TV (including its assigns, licensees, parents, subsidiaries, and

affiliates)," which are collectively defined as the "Producer" in the agreement.  Consent

Agreement at 1.  *See* Compl. ¶ 24; Schulman Decl. ¶ 10.  Yerushalayim Television, LLC is a

company that was used as part of the production of the Program and is wholly owned by Cohen.

*Id.* ¶¶ 7, 9.

Judge Moore (referred to in the Consent Agreement as the "Participant") entered into the

agreement "[i]n exchange for the Producer making a $200 donation to a charity chosen by the

Participant and allowing an opportunity to appear in a television series."  Consent Agreement at

1.  In particular, Judge Moore agreed that he

> specifically, but without limitation, waives, and agrees not to bring at any time in
> the future, any claims against the Producer, or against any of its assignees or
> licensees or anyone associated with the Program, which are related to the Program
> or its production, or this agreement, including, but not limited to, claims involving
> assertions of … (h) infliction of emotional distress (whether allegedly intentional
> or negligent), … (m) defamation (such as any allegedly false statements made in
> the Program), … [or] (p) fraud (such as any alleged deception about the Program
> or this consent agreement) ….

Consent Agreement ¶ 4.[4]

> The Consent Agreement further provides that it is
>
> the entire agreement between the Participant and the Producer or anyone else in relation to the Program, and the Participant acknowledges that in entering into it, the Participant is not relying upon any promises or statements made by anyone about the nature of the Program or the identity, behavior, or qualifications of any other Participants, cast members, or other persons involved in the Program. Participant is signing this agreement with no expectations or understandings concerning the conduct, offensive or otherwise, of anyone involved in this Program.

*Id.* ¶ 5.

> Finally, of particular relevance here, the Consent Agreement contains a forum selection and choice of law clause providing that any claims arising from the Program must be brought in New York and governed by New York law:
>
> Although the Participant agrees not to bring any claim in connection with the Program or its production, if any claim nevertheless is made, the Participant agrees that any such claim must be brought before, and adjudicated by, only a competent court located in the State and County of New York, and governed by the substantive laws of the State of New York. This paragraph is intended by the parties to stand on its own, and it is intended to be valid and enforceable, even if a court finds that other paragraphs are not valid or enforceable.

*Id.* ¶ 6.

> After signing the Consent Agreement, Judge Moore was interviewed for the Program. The episode containing this interview was first exhibited on SHOWTIME on July 29, 2018.  In the interview, Morad asks Judge Moore why he believes the State of Alabama is so closely connected to Israel, to which Judge Moore says that "Alabama has always been a state that valued freedom, valued liberty."  *See* YouTube Clip; Countee Decl. Ex. A.  When asked if

---

[4] Establishing just how thoroughly he reviewed the Consent Agreement, Judge Moore even made changes to the Agreement before he executed it.  Specifically, among the other waived claims is one for "intrusion or invasion of privacy (such as any allegedly sexually oriented or offensive behavior or questioning)."  *Id.*   Judge Moore struck out the parenthetical clause containing examples of that type of claim (but did not strike the waiver of the "intrusion or invasion of privacy" claim itself), and signed his initials next to that edit.  Consent Agreement ¶ 4.

Alabama has always been a place known for equality, Judge Moore says that "it has"—without a hint of irony or reflection on Alabama's history of racial segregation and oppression.  Judge Moore even claims that "it's part of our heritage, of course," when asked if people in Alabama have "always been free whatever their religion or race or sexuality."  *See id.*  Then, clearly playing off of the widely reported allegations against Judge Moore that emerged during his Senate campaign, Morad showed Judge Moore a device he says was invented by the Israeli Army and is able to detect pedophiles.  *See id.*; Compl. ¶ 21.  When waving the device in front of Judge Moore, it "beeps" as if detecting that he was a sex offender—although Morad keeps saying that the device is "not saying that you are a pedophile, of course not" and "I am not saying you are a sex offender at all."  YouTube Clip; Countee Decl. Ex. A.  Judge Moore cuts off the interview and leaves.

### D.      This Action

Notwithstanding the waiver of claims and forum selection clause contained in the Consent Agreement, on September 5, 2018, Plaintiffs filed this action in this Court, asserting claims for defamation (on behalf of Judge Moore), intentional infliction of emotional distress (on behalf of both Plaintiffs) and fraud (on behalf of both Plaintiffs).  The Complaint seeks "damages in excess of $95,000,000 USD," in addition to costs and attorneys' fees.

On October 18, 2018, pursuant to Local Civil Rule 7(m), undersigned counsel requested Plaintiff's consent to transfer this case to the Southern District of New York pursuant to the forum selection clause.  Plaintiff's counsel refused to consent.

## <u>ARGUMENT</u>

This Court should transfer this case to the United States District Court for the District of New York in accordance with the mandatory forum selection clause that Judge Moore—a sophisticated legal professional, indeed a former Chief Justice of a state Supreme Court—

willingly and freely signed.  And because Ms. Moore's claims are wholly derivative of the

claims asserted by Judge Moore, the case should be transferred in its entirety.

## I.     FORUM SELECTION CLAUSES MUST BE ENFORCED ABSENT EXTRAORDINARY CIRCUMSTANCES

The Supreme Court has long emphasized that forum selection clauses are "an

indispensable element" in commerce, allowing parties to "agree[] in advance on a forum

acceptable" to them.  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 13–14 (1972).  This

principle has "the salutary effect of dispelling any confusion about where suits arising from the

contract must be brought and defended, sparing litigants the time and expense of pretrial motions

to determine the correct forum and conserving judicial resources that otherwise would be

devoted to deciding those motions."  *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–94

(1991).

The Supreme Court recently clarified that a motion to enforce a forum selection clause

and transfer a case to another federal district court is treated as a motion under 28 U.S.C.

§ 1404(a).  *Atl. Marine Constr.*, 571 U.S. at 59-60.  That statute provides that "[f]or the

convenience of parties and witnesses, in the interest of justice, a district court may transfer any

civil action to any other district or division where it might have been brought or to any district or

division to which all parties have consented."  28 U.S.C. § 1404(a).  Ordinarily, the inquiry

under Section 1404 requires a court to balance various "private" and "public" interest

considerations to determine whether the "convenience of parties and witnesses" and "interest of

justice" weigh in favor of transfer, with some deference granted to the plaintiff's choice of

venue.  *See McGowan v. Pierside Boatworks, Inc.*, 215 F. Supp. 3d 48, 49–50 (D.D.C. 2016).

However, in *Atlantic Marine*, the Supreme Court unanimously held that, in the context of

motions to transfer, "a proper application of § 1404(a) *requires* that a forum-selection clause be

given controlling weight in all but the most exceptional cases" because this "promote[s] 'the

interest of justice'" under the statute. 571 U.S. at 63 (emphasis added) (internal quotation marks and citation omitted). Thus, the typical § 1404 "calculus changes … when the parties' contract contains a valid forum-selection clause," such that "the plaintiff's choice of forum merits ***no weight***." *Id.* at 63 (emphasis added). Instead, "as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* In doing so, a court "must deem the private-interest factors to *weigh entirely in favor of the preselected forum*." *Id.* (emphasis added).[5] In sum, when faced with a valid forum selection clause, "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Id.* at 52.

After *Atlantic Marine*, courts in this District apply a "two-step analysis" when deciding motions to transfer pursuant to a forum selection clause. *D&S Consulting, Inc. v. Kingdom of Saudi Arabia*, 322 F. Supp. 3d 45, 49 (D.D.C. Aug. 21, 2018), *appeal filed*, No. 18-7140 (D.C. Cir. Sept. 18, 2018); *Billard v. Angrick*, 220 F. Supp. 3d 132, 137 (D.D.C. 2016). First, the court determines whether there is a valid and enforceable forum selection clause that applies to the case. *See D&S Consulting*, 322 F. Supp. 3d at 49; *Atl. Marine Constr.*, 571 U.S. at 62 n.5. Second, if the forum selection clause is valid and applicable, the court "consider[s] whether public interest factors 'overwhelmingly disfavor' [transfer]." *D&S Consulting*, 322 F. Supp. 3d at 49 (quoting *Atl. Marine Constr.*, 571 U.S. at 67). Because this is not an extraordinary case, the forum selection clause mandates transfer under Section 1404(a).

---

[5] The private interest factors that would be considered absent a forum selection clause include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Atl. Marine Constr.*, 571 U.S. at 63 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

## II. THE COURT SHOULD TRANSFER THIS CASE PURSUANT TO THE MANDATORY FORUM SELECTION CLAUSE

### A.      The Forum Selection Clause Applies to this Case and is Valid

As to the first part of the "two-step analysis," the broad and mandatory forum selection clause applies to all of the claims and all parties in this case and is unquestionably enforceable.

First, the clause applies to all claims at issue here, as it covers "any claim in connection with the Program or its production."  Consent Agreement ¶ 6.  Plaintiffs' claims all arise "in connection with the Program or its production."  Plaintiffs allege Judge Moore was defamed by statements *made during the production of and aired on the Program.  See* Compl. ¶¶ 18, 21, 27. They allege that the airing of these allegedly defamatory statements *on the Program* inflicted emotional distress on Judge Moore and his family.  *See id.* ¶¶ 22, 32.  And they allege that they were defrauded *in connection with participation in the production* of the Program.  *See id.* ¶¶ 17-19, 40-48.  But the Court need not closely scrutinize Plaintiffs' allegations to conclude that the claims are within the scope of the forum selection clause.  The Consent Agreement specifically defines "any claims … related to the Program or its production" as "including but not limited to" the exact claims asserted here:  "(h) infliction of emotional distress," "(m) defamation," and "(p) fraud."  Consent Agreement ¶ 4.  All of the claims are thus subject to the forum selection clause.

Next, the forum selection clause applies to all of the parties in this case.  The application to Judge Moore is straightforward:  he signed the Consent Agreement.  And, because Judge Moore waived all claims against "anyone associated with the Program, which are related to the Program or its production, or this agreement," the agreement applies to all Defendants here.  *Id.* Indeed, Judge Moore brought the claims against the Defendants because of their role in "the Program or its production, or this agreement."  And the Defendants are all clearly "associated with the Program," as Cohen is the creator and star of the Program, and SNI, which is a subsidiary of CBS, acquired via license the necessary exclusive rights to exhibit and distribute

the Program.  *See Klapper v. Graziano*, 129 A.D.3d 674, 676, 10 N.Y.S.3d 560, 563 (N.Y. App.

Div. 2015) (holding that "clear intent of" similar television "Appearance Release" signed by

production company was to "release from liability [the signatory company] and those acting with

it or on its behalf to produce the reality show," and affirming application of release to other

production companies, assignees, and television networks involved in production and airing of

show).

Although Ms. Moore did not personally sign the Consent Agreement, the forum selection

clause should be enforced against her claims as well.  It is well settled that "non-parties and non-

signatories to an agreement may be bound by that agreement's forum selection clause," where, as

here, "their conduct is 'closely related to the contractual relationship' so that [it] is 'foreseeable

that they would be bound by such clause.'"  *Song fi, Inc. v. Google Inc.*, 72 F. Supp. 3d 53, 60

(D.D.C. 2014) (quoting *Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC*, 60 F. Supp. 3d 21,

32–35 (D.D.C. 2014)).  Ms. Moore is "closely related" to the signatories—and not simply by

marriage to Judge Moore.  Courts have "repeatedly found non-signatories 'closely related' to

signatories where their interests are completely derivative of and directly related to, if not

predicated upon the signatory party's interests or conduct."  *KTV Media Int'l, Inc. v. Galaxy

Grp., LA LLC*, 812 F. Supp. 2d 377, 386–87 (S.D.N.Y. 2011) (citations and internal quotation

marks omitted) (collecting cases).

Here, Ms. Moore makes *no* claims of her own—her claims are "completely derivative" of

Judge Moore's claims.  *Id.*  The gravamen of Plaintiffs' Complaint is that the "false and

fraudulent portrayal and mocking of *Judge Moore* as a sex offender, on national and

international television … has severely harmed *Judge Moore*'s reputation and caused him,

Ms. Moore, and his entire family severe emotional distress [and] financial damage."  Compl.

¶ 22 (emphasis added).  Where, as here, a second plaintiff's claims simply "piggy-back" on the

claims of the signatory, it is eminently "foreseeable" that the forum selection clause will be applied to all of the claims, even if the additional plaintiff did not personally sign the agreement. *See, e.g.*, *Kotan v. Pizza Outlet, Inc.*, 400 F. Supp. 2d 44, 48 (D.D.C. 2005) (plaintiff company bound by forum selection clause signed by its principal because the company's "claims against the defendants flow out of [the signatory's] interactions with the defendants").[6]

Finally, the forum selection clause is enforceable.  Under this framework, "[f]orum-selection clauses are presumptively valid and enforceable unless the party opposing enforcement meets a heavy burden of proof of showing that the clause is 'the product of fraud or that its enforcement would contravene a strong public policy of the forum in which suit is brought.'" *D&S Consulting*, 322 F. Supp. 3d at 49 (quoting *Marra v. Papandreou*, 216 F.3d 1119, 1124 (D.C. Cir. 2000)).  Thus, to escape the clause, Plaintiffs must make a "strong showing" that "enforcement would be unreasonable and unjust," *M/S Bremen*, 407 U.S. at 15, by establishing that "(1) formation of the clause was tainted by fraud or overreaching; (2) enforcement would effectively deprive the complaining party of his day in court or deprive him of any remedy; or (3) enforcement would contravene a strong public policy of the forum state." *2215 Fifth St. Assocs. v. U-Haul Int'l, Inc.*, 148 F. Supp. 2d 50, 54–55 (D.D.C. 2001) (citation omitted).

The second and third factors plainly do not apply here.  There is no "public policy" of the District of Columbia that would preclude enforcement of forum selection clauses generally, or transfer to the Southern District of New York, in particular.  On the contrary, courts in this Circuit have noted the "'public policy' considerations weighing in favor of upholding … forum selection clause[s]," as "[n]umerous courts have expressed concern that disregard of forum selection clauses will inhibit 'the expansion of American business and industry.'" *Cheney v. IPD*

---

[6] Even if the forum selection clause did not apply to Ms. Moore, it indisputably does apply to Judge Moore's claims, and, for the reasons discussed *infra*, Section II.C, the case should be transferred in its entirety to the Southern District of New York, including Ms. Moore's claims.

*Analytics, LLC*, 583 F. Supp. 2d 108, 120 (D.D.C. 2008) (quoting *Commerce Consultants Int'l, Inc. v. Vetrerie Riunite, S.p.A.*, 867 F.2d 697, 700 (D.C. Cir. 1989))).  Plaintiffs also cannot seriously argue that litigating in a different federal district court four states away from here would somehow deprive them of their "day in court"—particularly since they already chose to litigate this case more than 800 miles from their home in Montgomery, Alabama.  Indeed, "it strains credulity to submit that litigating in another federal judicial district would result in an immoral or illegal result." *Cheney*, 583 F. Supp. 2d at 120.  *See also Bank v. Laptop & Desktop Repair LLC*, 206 F. Supp. 3d 772, 779 (E.D.N.Y. 2016) ("No credible argument has been made that plaintiff will be deprived of his day in court due to the inconvenience of litigating this dispute in Nevada, nor that Nevada law is fundamentally unfair or would deprive him of a remedy.").

Thus, Plaintiffs will presumably rely on the first factor here to argue that the forum selection clause cannot be enforced because "formation of the clause was tainted by fraud or overreaching."  *2215 Fifth St. Assocs.*, 148 F. Supp. 2d at 54–55.  In fact, Plaintiffs allege in the Complaint that "the release that Judge Moore had signed was obtained through fraud, and was therefore void and inoperative."  Compl. ¶ 24.  But it is well settled that "[a] claim of fraud in the inducement of a contract is insufficient to invalidate a forum selection or choice-of-law clause found in that contract.  Rather, it is the *inclusion of those specific clauses* plaintiffs seek to avoid that must have been induced by fraud."  *Marra v. Papandreou*, 59 F. Supp. 2d 65, 68-71 & n.3 (D.D.C. 1999) (citation omitted) (emphasis added), *aff'd*, 216 F.3d 1119 (D.C. Cir. 2000); *see also 2215 Fifth St. Assocs.*, 148 F. Supp. 2d at 54–56 ("[F]raud and overreaching must be specific to a forum selection [clause] in order to invalidate it.") (citation omitted); *Water & Sand Int'l Capital, Ltd. v. Capacitive Deionization Tech. Sys., Inc.*, 563 F. Supp. 2d 278, 283–84 (D.D.C. 2008) ("Mere conclusory allegations that a forum selection was induced by fraud and

misrepresentations are insufficient to overcome the strong presumption in favor of enforcing forum selection clauses.").

Here, Plaintiffs allege that they were defrauded as to the overall nature of the Program, and purpose of the interview of Judge Moore.  Compl. ¶¶ 15-16.  But that allegation is insufficient to void the forum selection clause itself.  Of particular relevance here, several of the participants in Cohen's movie *Borat* filed suit in the Northern District of Alabama despite having signed a nearly identical consent agreement that contained the same forum selection clause as in Judge Moore's Consent Agreement.  *See Streit v. Twentieth Century Fox Film Corp.*, No. CV 07-J-1918-S, 2008 WL 11422482 (N.D. Ala. Jan. 30, 2008).  In an effort to avoid the forum selection clauses, the *Borat* participants made similar allegations that they were fraudulently induced into signing the agreements because the producers claimed to be with "Springland Films," which plaintiffs said was a "false name."  *Streit v. Twentieth Century Fox Film Corp.*, No. CV-07-J-1918-S, 2008 WL 1814835, at *8 (N.D. Ala. Trial Motion, Memorandum and Affidavit).  Plaintiffs also alleged that the producers promised that they were making "an educational documentary for Belarus Television," when in fact they appeared in the comedic movie *Borat*, which was distributed by Twentieth Century Fox Film Corporation.  *Id.* at *9.  But the court did not hesitate to transfer the case to the Southern District of New York because "an allegation of fraud renders a forum selection clause unenforceable *solely* when 'the inclusion of that clause in the contract was the product of fraud or coercion.'"  2008 WL 11422482, at *1 (quoting *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1296 (11th Cir. 1998)) (emphasis added).  Because the plaintiffs had not shown that the clause itself was included through fraud, the case was transferred to New York.  *Id.*

The same reasoning applies here.  Judge Moore makes no allegation that he was somehow fraudulently induced to agree to the forum selection clause in particular.  Instead, he

asserts that the Consent Agreement he signed was with "Yerushalayim TV"—not SNI—and that he believed he was being filmed in order to "receive an award for his strong support of Israel." Compl. ¶ 15.  These overarching allegations of fraud do not invalidate the forum selection clause in the Consent Agreement.[7]

Because Plaintiffs cannot meet their "heavy burden" to show that the forum selection clause is invalid, it must be enforced unless the "public-interest factors overwhelmingly disfavor a transfer." *Atl. Marine Constr.*, 571 U.S. at 60.  As discussed below, they don't.

### B.    The "Public Interest" Factors Weigh In Favor of Transfer

In *Atlantic Marine*, the Supreme Court held that when a party files an action in the wrong forum "in violation of the forum-selection clause," that party "must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Id.* at 67.  And that party must make this showing against the backdrop of the Supreme Court's instruction that "[i]n all but the most unusual cases … 'the interest of justice' is served by holding parties to their bargain" and transferring the case to the designated forum. *Id.* at 66.  Plaintiffs cannot do so here.

The relevant public interest factors are (1) "the interest in having the trial of a diversity case in a forum that is at home with the law"; (2) "the administrative difficulties flowing from court congestion"; and (3) "the local interest in having localized controversies decided at home." *Atl. Marine Constr.*, 571 U.S. at 63 n.6 (citation omitted).  Not only do these factors not "overwhelmingly disfavor a transfer," on balance, they weigh *in favor* of transfer.

---

[7] Any fraudulent inducement argument is further undermined by the fact that Judge Moore expressly disclaimed any reliance "upon any promises or statements made by anyone about the nature of the Program or the identity, behavior, or qualifications of any other Participants, cast members, or other persons involved in the Program."  Consent Agreement ¶ 5.  In the *Borat* cases, the court enforced the waiver contained in the consent agreements to dismiss the complaints in full —despite similar fraudulent inducement arguments—based on the principle that "the defense of fraud in the inducement is foreclosed to a party who disclaims, in the contract itself, reliance on fraudulent statements allegedly made to induce him to enter into the contract." *Psenicska*, 2008 WL 4185752, at *6.

The first factor clearly favors transfer.  The Consent Agreement itself contains a choice of law clause designating "the substantive laws of the State of New York."  Consent Agreement ¶ 6.  Thus, the only district "at home with the law" that will govern this case is one in New York.

The "court congestion" factor is, at best, a wash.  Courts in this District analyze this factor by comparing the respective districts' "median filing times to disposition in the courts at issue."  *Pueblo v. Nat'l Indian Gaming Comm'n*, 731 F. Supp. 2d 36, 40 n.2 (D.D.C. 2010) (collecting cases).  A comparison of the statistics for this District and the Southern District of New York as of June 30, 2018 (which are made public by the government) shows a negligible difference in that time period—6.0 months for this District and 6.4 months for the Southern District of New York.  *See* Federal Court Management Statistics (June 30, 2018), *available at* http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2018/06/30-1. Courts hold that such minute differences are "not significant enough to weigh on the issue of transfer."  *Pueblo*, 731 F. Supp. 2d at 40 n.2 (comparing 8.3 months and 9.0 months).

Finally, this is not a "local controversy," and any interest the District of Columbia might have in the case is outweighed by that of New York.  Although the interview with Judge Moore happened to be filmed at a hotel in the District, none of the parties reside in the District. Plaintiffs are residents of Alabama, Mr. Cohen is a resident of California, and both SNI and CBS are headquartered in New York.  Further, as Plaintiffs note, the "wide[] broadcast" of the Program on "national television and worldwide" by SNI originated in New York.  Compl. ¶ 22. Courts in this District recognize the "special interest" each district court has "in cases involving companies headquartered in that state."  *Kazenercom TOO v. Turan Petroleum, Inc.*, 590 F. Supp. 2d 153, 163–64 (D.D.C. 2008) (citing *Hitchcock v. United States*, 665 F.2d 354, 360 (D.C. Cir. 1981)).  *See also Mazzarino v. Prudential Ins. Co. of Am.*, 955 F. Supp. 2d 24, 32–33 (D.D.C. 2013) (holding that District of New Jersey "has more of a local interest in deciding [a]

controversy" involving an insurance plan that was "administered in New Jersey" by a company with its principal place of business there).  Thus, the fact that SNI and CBS are headquartered in New York weighs in favor of transfer there.

As the Supreme Court cautioned, "[b]ecause [these public interest factors] will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Atl. Marine Constr.*, 571 U.S. at 64.  This is not an unusual case.

### C.      The Entire Case Should Be Transferred to New York

Finally, the interests of justice also mandate transfer of this entire case, regardless of whether the forum selection clause is enforceable against Ms. Moore.  As a default matter, "[c]ases transferred pursuant to Section 1404(a) must be transferred in their entirety." *M.M.M. on behalf of J.M.A. v. Sessions*, 319 F. Supp. 3d 290, 294–95 (D.D.C. 2018).  But even if the Court could ostensibly sever and retain jurisdiction over Ms. Moore's claims, it would make no sense to do so here.  When the claims of different plaintiffs "arise out of the same series of events"—as they surely do here—"the public interest would be served by keeping all of [the] claims … together," because "[t]o rule otherwise would result in needlessly duplicative proceedings." *Daniels v. Wilkie*, No. 17 Civ. 1543, 2018 WL 2324085, at *6–7 (D.D.C. May 22, 2018); *see also Gardner v. Mabus*, 49 F. Supp. 3d 44, 47–48 (D.D.C. 2014) ("It is in the interest of justice to transfer the entire complaint rather than have it heard in two different venues.") (quoting *In re O'Leska*, No. 00-5339, 2000 WL 1946653, at *1 (D.C. Cir. 2000)); *Fed. Hous. Fin. Agency v. First Tennessee Bank Nat'l Ass'n*, 856 F. Supp. 2d 186, 193–96 (D.D.C. 2012) (noting "paramount consideration" of "the compelling public interest in avoiding duplicative proceedings ... and potentially inconsistent judgments") (citation omitted).

This case arises from *Judge Moore* being featured on a television show produced for and aired by SNI.  All of the alleged harm is based on the fact that *Judge Moore* was purportedly

"mocked and defamed … on national television."  Compl. ¶ 37.  Judge Moore signed a Consent

Agreement waiving any claims arising out of his participation in that show, and agreed that, if he

nevertheless asserted such claims in violation of the Consent Agreement, he must do so in New

York.  He cannot "evade the effect of [a] forum-selection clause merely by joining … a non-

signatory to the [agreement]" as an additional, tag-along plaintiff.  *Novak v. Tucows, Inc.*, No.

06-CV-1909, 2007 WL 922306, at *13 (E.D.N.Y. Mar. 26, 2007), *aff'd*, 330 F. App'x 204 (2d

Cir. 2009); *see also Sabre Int'l*, 60 F. Supp. 3d at 34 ("[W]ere it not for judicial willingness in

appropriate circumstances to enforce forum selection clauses against [non-parties], such clauses

often could easily be evaded.") (citation omitted); *Am. Patriot Ins. Agency, Inc. v. Mutual Risk*

*Mgmt., Ltd.*, 248 F. Supp. 2d 779, 785 (N.D. Ill. 2003) ("Plaintiffs cannot escape their

contractual obligations simply by joining parties who did not sign the contract and then claiming

that the forum selection clause does not apply."), *rev'd on other grounds*, 364 F.3d 884 (7th Cir.

2004).  This case is brought against primarily New York defendants and will be decided by New

York law.  And pursuant to the Consent Agreement that is dispositive of the claims, it must be

decided in a New York court.

## CONCLUSION

For all of the reasons set forth above, Defendants respectfully request that the Court

transfer this case in its entirety to the U.S. District Court for the Southern District of New York

pursuant to 28 U.S.C. § 1404(a).

Dated: October 23, 2018

Respectfully submitted,

/s/ *Eric J. Feder*
Elizabeth A. McNamara (*pro hac vice* forthcoming)
Rachel F. Strom (*pro hac vice* forthcoming)
Eric J. Feder (DC Bar No. 1048522)

DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York  10020
(212) 489-8230
(212) 489-8340 (fax)

1919 Pennsylvania Avenue N.W., Suite 800
Washington, D.C.  20006-3401
(202) 973-4200
(202) 973-4499 (fax)
lizmcnamara@dwt.com
rachelstrom@dwt.com
ericfeder@dwt.com


Of Counsel:

Russell Smith, Esq.
Jeff Holmes, Esq.
SMITH DEHN LLP
2500 Broadway
Building F, Suite F-125
Santa Monica, California  90404
(310) 396-9045
rsmith@smithdehn.com
jholmes@smithdehn.com

*Attorneys for Defendants*