# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ROY STEWARY MOORE, et al

                Plaintiffs,

v.

SASHA NOAM BARON COHEN, et al

                Defendants.

Case No: 1:18-cv-02082

## PLAINTIFFS' MOTION FOR LEAVE TO FILE SURREPLY TO REPLY TO OPPOSITION TO MOTION TO TRANSFER AND PROPOSED SURREPLY

Plaintiffs Roy Moore ("Judge Moore") and Kayla Moore ("Ms. Moore") (collectively "Plaintiffs") move this Court for leave to file the attached surreply in response to Defendants' reply to opposition to motion to transfer.

Leave to file a surreply should be granted when the moving party would be "otherwise unable to contest matters presented to the court for the first time in the opposing party's reply." *Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D.D.C. 2001). In this Circuit, "district court[s] routinely grant…such motions" when this standard is satisfied. *Ben-Kotel v. Howard Univ.*, 319 F.3d 532, 536 (D.C. Cir. 2003).

Here, Defendants make new misstatements of law and fact in their reply that are either misleading or patently false that Plaintiffs have not had a chance to respond to. Allowing these misstatements to remain on the record without granting Plaintiffs an opportunity to respond would severely prejudice Plaintiffs. Plaintiffs' brief proposed surreply only addresses these misstatements and makes no new arguments.

Pursuant to the Local Civil Rules, Plaintiffs have asked counsel for Defendants for their consent to this motion, and Defendants have denied consent.

**Dated**:  January 10, 2019                      Respectfully Submitted,

  /s/ *Larry Klayman*

Larry Klayman, Esq.
KLAYMAN LAW GROUP,
P.A.

2020 Pennsylvania Ave. NW # 800
Washington, D.C. 20006
(310) 595-0800
 Email: leklayman@gmail.com

 Attorney for Plaintiffs

**[PROPOSED] SURREPLY**

**I.   The Court Cannot Take Defendants' Assertions That They Can Enforce The "Consent Agreement" at Face Value**

In Defendants' reply brief, which concedes that none of the Defendants are named parties to the purported "Consent Agreement," Defendants argue that they can nonetheless enforce the terms of the "Consent Agreement" due to language that defines "Producer" as "Yerushalayim TV (including its assigns, licensees, parents, subsidiaries, and affiliates)." Defendants disingenuously and misleadingly assert that the "undisputed evidence" shows that "Yerushalayim Television, LLC is wholly owned by Defendant Cohen through his wholly-owned production company." ECF No. 18 at 12. This purported fact is, however, actually strongly disputed by Plaintiffs, as the "evidence" submitted by Defendants consists of three paragraphs of an entirely self-serving affidavit unsupported by any actual evidence.

The entirety of Defendants' "evidence" is contained in the Declaration of Todd Schulman, who is the Executive Producer and Director of *Who Is America*? ECF No. 6-2 ("Schulman Dec.") This in and of itself raises a huge red flag, as Mr. Schulman declares that he has worked with Defendant Cohen on numerous other projects, including *Borat*, *Bruno*, and *Da Ali G Show*. Each of these productions involves Defendant Cohen disguising himself and/or playing a character in order to induce unwitting participants to appear on camera. Thus, Mr. Schulman's livelihood is directly linked to Defendant Cohen's ability to continue to take on these types of roles. Mr. Schulman's Declaration, therefore, is entirely self-serving, as it is in his own best interest to ensure that Defendants can continue to fraudulently induce innocent victims to appear on Defendant Cohen's projects through purported "Consent Agreements."

Mr. Schulman's entirely self serving and highly suspect affidavit should be given no weight, especially given the wholly fraudulent nature of the uncontroverted allegations set forth

in Plaintiffs' Complaint. Not only did Defendant Cohen misrepresent his own identity at all times, he misrepresented the true purpose and nature of Plaintiffs' interview in Washington D.C. This was done solely for "shock and awe" and to try to get favorable ratings by falsely portraying Judge Moore as a sex-offender. This fraud is compounded by the details set forth in Plaintiffs' Supplement to Opposition to Defendants' Motion to Transfer, whereby Defendant Cohen, in concert with the other Defendants, went so far as to try to fraudulently defraud Secretary of Housing and Urban Development Ben Carson and even Secret Service agents. As per Defendant Cohen's own admission, "[w]e set up an interview with Dr. Ben Carson and we had a hotel room in the Mandarin Oriental in DC… **I'd been living in DC, undercover, for about three weeks.** Bernie Sanders' people had become suspicious from day one, and so I needed to ensure that nobody knew that I was there. That no one recognized me for three weeks. So I was basically living undercover and in disguise for three weeks. And in the last couple of days, Ben Carson agrees to an interview." Exhibit 1. Defendant Cohen admits in depth how he sought to and actually did incredibly attempt defraud the Secret Service, which shows a criminal intent:

> We booked two hotel rooms. One hotel room I was going to interview Ben Carson in, and obviously, he had his own Secret Service detail and he was coming with White House press staff," Cohen recalled. "I was in the other room and I got on the phone to my lawyer and said listen, there's an issue. What happens if a part of his security detail asks for my ID? Because if I give them my real ID we're done, and so I had a fake ID on me with the name of my character, this Finnish unboxing YouTube star [the character was OMGWhizzBoyOMG], and he said, 'if you give out a fake ID they'll arrest you and you'll probably go to jail.' So we came up with a solution, which was, if my ID fell on the floor and they picked it up and they made the assumption that this fake ID was real, then I hadn't actually misled the Secret Service. Exhibit 1.

It is clear that Defendants are willing to go to enormous lengths and compound their series of rank frauds in order to be able to continue to try to defraud unwitting victims for the

sake of personal profit and ratings. Defendants have perpetrated fraud upon fraud and can therefore cannot be believed on any count. As such, Mr. Schulman's Declaration, without more, can be afforded no weight, and this case must proceed to discovery to avoid a fraud now on the Court. Defendants know no truthful bounds.

Furthermore, the three paragraphs contained in Mr. Schulman's Declaration that are cited as "undisputed evidence" by Defendants are as follows:

> Mr. Cohen produced the Program in conjunction with certain production companies, of which he is the ultimate sole owner. Those companies included La Quinta Entertainment, LLC ("La Quinta") and Please You Can Touch LLC (collectively, the "Production Companies"). The Production Companies own the rights to the Program.
>
> 5. In February 2017, the Production Companies entered into an agreement with Showtime Networks Inc. ("SNI") under which the Production Companies licensed the Program for distribution by SNI, including exhibition on the SHOWTIME cable network.
>
> 7. In producing the Program, the Production Companies also worked with certain affiliated production companies, of which Mr. Cohen was also the ultimate sole owner. One such affiliated company was Yerushalayim Television, LLC ("YTV"), which is ultimately a wholly owned subsidiary of La Quinta. Schulman Dec. ¶¶ 4, 5, 7.

Predictably, given their penchant for shamelessly committing fraud upon fraud, notably absent from Mr. Schulman's declaration, however, is any form of evidence that Yerushalayim TV is actually a subsidiary owned by Defendant Cohen. Mr. Schulman simply states this without any evidentiary support. There is also notably no declaration from Defendant Cohen, the purported "owner" of Yerushalayim TV and the "fraudster-in-chief."

In this regard, Defendants' motion to transfer is, *at best,* premature, since Plaintiffs have not been given any chance to conduct even basic discovery to verify Mr. Schulman's self-serving and obviously false claims. Defendants are therefore conveniently able to make unsubstantiated claims, disguised in the form of self-serving declarations, in order to try to fraudulently achieve –

3

now with this Court as the intended "victim" - their calculated goal to transfer this case to what they perceive to be a favorable venue and forum.

## II. Defendants Are Not Intended Third Party Beneficiaries

Defendants make the false argument that they are intended third party beneficiaries to the "Consent Agreement" merely because it broadly asserts that claims are waived against "…anyone associated with the Program." This contention, however, is not supported by well-settled law.

Indeed, the only District of Columbia case cited by Defendants in support actually cuts against Defendants' position when the facts of the case are actually revealed. *Woodfield v. Providence Hosp.*, 779 A.2d 933 (D.C. 2001). In *Woodfield*, an employee at Providence Hospital applied for and was hired at another hospital, Suburban Hospital. The employee signed a release that contained the following language:

> I hereby authorize Suburban Hospital Healthcare System, Inc. and/or its agents to investigate my background to determine any and all information of concern to my record, whether same is of record or not. I release employers and persons named in my application from all liability for any damages on account of his/her furnishing said information. *Id*. at 936.

Eventually, the employee sued Providence Hospital and her old supervisor for defamation, and the Defendants asserted that there were intended third party beneficiaries and could therefore enforce the release. Crucially, the Court agreed with the Defendants on the grounds that "the release specifically identified the intended beneficiaries as those entities and individuals named in appellant's employment application, which included Providence Hospital and Easterling." *Id*. at 937. On the other hand, here, the "Consent Agreement" makes no such specific identification of the purported third party beneficiaries, only a broad, ill-defined, vague, non-specific and general "catch-all."

Furthermore, in analyzing the Defendants' third party status, the *Woodfield* court set forth the following test: "One who is not a party to a contract nonetheless may sue to enforce its provisions if the contracting **parties** intend the third party to benefit directly thereunder." *Id*. at 937 (emphasis added) (quoting *Western Union Tel. Co. v. Massman Constr. Co.*, 402 A.2d 1275, 1277 (D.C. 1979)). It is readily apparent from the language used by the Court that there is no unilaterally granted third-party beneficiary – both parties must be in agreement. It is clear that Judge Moore never intended Defendants Cohen, Showtime and CBS to be third party beneficiaries.

Defendants do not consent to this motion, which Plaintiffs respectfully request be granted in the interests of truthful justice based on fact and law, rather than continuing apparent fraud by them.

Dated: January 10, 2019                                                  Respectfully submitted,

*/s/ Larry Klayman*
Larry Klayman, Esq.
KLAYMAN LAW GROUP, P.A.
D.C. Bar No. 334581
2020 Pennsylvania Ave NW #800
Washington, DC, 20006
Tel: (561)-558-5536
Email: leklayman@gmail.com

Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically and served through the court's ECF system to all counsel of record or parties on January 10, 2019.

>*/s/ Larry Klayman*
>Larry Klayman, Esq.



**Up Next**

CELEBS RIDICULE KEVIN SPACEY OVER VIDEO
**ZACK SHARF**

SAVE OVER 35% ON SELECTTV
**SHOPPING CONTENT BY SALON MARKETPLACE**

IN THE REAL WORLD OF THE WORKING POOR

Try the NEW Ad-Free Salon!  TURN ADS OFF                                                                ×

Ben Carson; Sacha Baron Cohen (AP/Andrew Harnik/Evan Agostini)

# The year that wasn't: Ben Carson almost got the Sacha Baron Cohen treatment

The story of how the secretary of housing and urban development was nearly duped on "Who is America"

12  

**MATTHEW ROZSA**
DECEMBER 25, 2018 12:00PM (UTC)

S acha Baron Cohen's new show *Who Is America?* was a major hit, one in which the comedian went undercover and interviewed prominent politicians from Sen. Bernie Sanders of Vermont and former Alabama Senate candidate Roy Moore to former Vice President Dick Cheney and former Maricopa County, Arizona sheriff Joe Arpaio. Yet there is at least one politician he was unable to successfully interview, and he happens to be a high-ranking official in President Donald Trump's administration — Secretary of Housing and Urban Development Ben Carson.

In an interview with Deadline, Cohen describes how he came very close to interviewing a member of President Donald Trump's administration.

---

Advertisement:

---

"We set up an interview with Dr. Ben Carson and we had a hotel room in the Mandarin Oriental in DC," Cohen explained. "I'd been living in DC, undercover, for about three weeks. Bernie Sanders' people had become suspicious from day one, and so I needed to ensure that nobody knew that I was there. That no one recognized me for three weeks. So I was basically living undercover and in disguise for three weeks. And in the last couple of days, Ben Carson agrees to an interview."

After describing how the hotel was filled with Secret Service agents because of a big international conference occurring that was full of politicians, Cohen described how he attempted to make the Carson interview work anyway.

"We booked two hotel rooms. One hotel room I was going to interview Ben Carson in, and obviously, he had his own Secret Service detail and he was coming with White House press staff," Cohen recalled. "I was in the other room and I got on the phone to my lawyer and said listen, there's an issue. What happens if a part of his security detail asks for my ID? Because if I give them my real ID we're done, and so I had a fake ID on me with the name of my character, this Finnish unboxing YouTube star [the character was OMGWhizzBoyOMG], and he said, 'if you give out a fake ID they'll arrest you and you'll probably go to jail.' So we came up with a solution, which was, if my ID fell on the floor and they picked it up and they made the assumption that this fake ID was real, then I hadn't actually misled the Secret Service."

He concluded, "So I go into the room, got past the Secret Service, got in front of the camera. This character has a bunch of Shopkins [collectible toy figures], and the White House press representative was there. He says, 'what are those?' I say, these are Shopkins. He says, 'I know what they are, but why are there Shopkins here?' I go, it's because that's what I do, I unbox Shopkins. And I can see Ben Carson is literally walking in front of the camera. He's just about to enter frame and this guy from the White House had an instinct and he said, 'Pull him.' And suddenly the Secret Service pulled him out. So the most I got to see was Ben Carson's leg."

## MATTHEW ROZSA

Matthew Rozsa is a breaking news writer for Salon. He holds an MA in History from Rutgers University-Newark and is ABD in his PhD program in History at Lehigh University. His work has appeared in Mic, Quartz and MSNBC.

MORE FROM **MATTHEW ROZSA**

### Related


Sarah Palin angry she was "duped" by "evil" Sacha Baron Cohen


Sacha Baron Cohen tricks Corey Lewandowski into defending Nazis


Sacha Baron Cohen uses "pedophile detector," calls Roy Moore a pedophile to his face


"Who Is America?" season 2 never happening, Sacha Baron Cohen says it's "impossible"

### Editor's Picks


Rebecca Traister: "We know what [MAGA] is code for. It's not even a secret"


Instant Pot made easy by NYT food reporter and author Melissa Clark


Mira Sorvino worried she'd be blackballed over #MeToo: "Instead, we were the tip of a tidal wave"


Jill Soloway unpacks "white male liberal" Hollywood: "It's patriarchy, even coming from the left"

### Explore Salon